IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JENNIFER EPPLEY and <br> DARYL EPPLEY, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNIVERSITY OF DELAWARE, <br> THE BOARD OF TRUSTEES OF THE <br> UNIVERSITY OF DELAWARE, and <br> ROLF VAN DE KERKHOF, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 13-cv-99 (GMS) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM

### I. INTRODUCTION

The plaintiffs, Jennifer Eppley ("Ms. Eppley") and Daryl Eppley ("Mr. Eppley") (collectively, "the Eppleys"), filed a Complaint (D.I. 1) against the University of Delaware, the Board of Trustees of the University of Delaware, and Rolf Van de Kerkhof (collectively, "UD"), on January 17, 2013. (*Id.*) In their Complaint,[1] the Eppleys allege that UD failed to honor an athletic scholarship agreement made by the then-coach of the field hockey team, Carol Miller ("Coach Miller"). (D.I. 11 at ¶ 72.) On September 3, 2014, following completion of discovery,[2]

---

[1] The Eppleys' Complaint lists six counts—(I) Title IX; (II) Violation of Due Process Rights; (III) Negligent Misrepresentation; (IV) Fraudulent Inducement; and (V) Intentional and Negligent Infliction of Emotional Distress; and (VI) Intentional and Negligent Infliction of Physical Injuries. Count II was dismissed as to all defendants by the court on May 23, 2013. (*See* D.I. 9.) The Eppleys' Answering Brief (D.I. 25) does not address counts V or VI and are thus waived. *See Glover v. City of Wilmington*, 966 F. Supp. 2d 417, 428 (D. Del. Aug. 7, 2013) (finding that plaintiff waived claim by "failing to address it in her responsive brief to [defendant's] motion for summary judgment.").

[2] Counsel for the Eppleys, Charles Snyderman, requested additional discovery in the body of the Answering Brief to the defendants' Motion for Summary Judgment. (*See* D.I. 25 at 4.) Discovery closed on August 1, 2014. Despite ample opportunity, and with no stated reason for their failure to do so, the Eppleys served no discovery requests and noticed no depositions before the deadline. It was not until August 22, 2014, that the Eppley's filed Notice of a Rule 30(b)(6) deposition for an uncertain date. (D.I. 19.) On August 22, 2014, prior to filing their Notice, Mr. Snyderman requested defendants' counsel agree to an extension of deadlines. (*See* D.I. 26, Ex. A.) Counsel for the defendants did not agree to Mr. Snyderman's request. (*Id.*) While the defendants' deposition of the Eppleys

UD filed a Federal Rule of Civil Procedure 56(c) Motion for Summary Judgment (D.I. 20), asserting that the Eppleys' allegations are meritless because the scholarship at issue was guaranteed for only one year as is evidenced by the contract the Eppleys both signed. (D.I. 21 at 6.) Presently before the court is UD's Motion for Summary Judgment. (D.I. 20.) For the reasons that follow, the court will grant UD's motion.

## II. BACKGROUND

The plaintiffs in this case are Jennifer Eppley and her father, Daryl Eppley. Ms. Eppley played on her high school's field hockey team and was recruited by various universities to play field hockey during her final years of high school. (D.I. 1 at ¶ 10-12, 16.) Members of the UD field hockey coaching staff first reached out to Ms. Eppley in December, 2008. (*Id.*) On June 8, 2009, Ms. Eppley and Coach Miller had an email exchange regarding her participation in an upcoming UD field hockey camp. (*Id.* ¶ 14-15.) Under National Collegiate Athletic Association ("NCAA") rules, July 1, 2009 was the earliest date that college coaches were permitted to contact high school athletes for recruiting purposes. (*Id.* ¶ 18.) Coach Miller contacted Ms. Eppley on July 1, 2009 and left her a message expressing a desire to have Ms. Eppley play on UD's team. (*Id.*)

---

occurred after the close of discovery, the court is confident that the delay was caused by Mr. Snyderman's lag in scheduling rather than the result of any dilatory tactics by the defendants. While the court often grants extensions, Mr. Snyderman's complete failure to comply with the scheduling order or to provide a Rule 56(f) affidavit is fatal to his request and viewed by the court, at best, as an egregious oversight. *See Dowling v. City of Philadelphia*, 855 F.2d 136, 139-40 (3d Cir. Aug. 26, 1988) ("This Court has interpreted Rule 56(f) as imposing a requirement that a party seeking further discovery in response to a summary judgment motion submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained."); *Koehnke v. City of McKeesport*, 350 F. App'x 720, 723 (3d Cir. Oct. 28, 2009) ("A party that cannot present facts essential to justify its opposition may—and, indeed, must—show by affidavit, how evidence of such facts would preclude summary judgment.") (quoting *Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002)); *see also Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986) (finding that party's failure to conduct expert discovery within given period imposed "obligation to provide the court with a record which affirmatively demonstrates, with specificity, diligent efforts on his or her part and unusual circumstances which have frustrated those efforts.").

In September 2009, during Ms. Eppley's "official visit" to UD, Ms. Eppley and her parents had a meeting with Coach Miller in her office. (*Id.* ¶ 20.) Ms. Eppley asserts that during this meeting, in the presence of both of her parents, Coach Miller orally offered Ms. Eppley "a scholarship which she said would be 35% in [Ms. Eppley's] first year, 75% in year two, and 75% or more in years three and four." (*Id.*) Mr. Eppley sent an email to Coach Miller on September 24, 2009 for clarification regarding Ms. Eppley's scholarship. (D.I. 22, Ex. I); *see* D. Eppley Tr. at 37:3-7. In her response, Coach Miller clarified that "Jenn will be guaranteed to receive the same or greater (not less than) percentage of scholarship for years 3 and 4 that she is receiving for year 2." (D.I. 22, Ex. I.)

On January 21, 2010, Ms. Eppley received a letter from Coach Miller informing her that she had been selected to receive an athletic scholarship to the University of Delaware. (*See* D.I. 22, Ex. A.) The amount, duration, conditions, and terms of the award offered to Ms. Eppley were set forth in writing in an Athletic Grant-In-Aid document (the "GIA Contract") enclosed with the letter. (*See id.*, Ex. B.) The GIA Contract offered Ms. Eppley a grant in the amount of $11,512.90 (equal to 35% of the tuition and fees that would have been owed that year by an out-of-state student) for the period beginning August 31, 2010 and ending May 28, 2011.[3] (*Id.*) The GIA Contract was signed and dated by Jennifer and Daryl Eppley on February 3, 2010. (*Id.*) On the same day, the Eppleys signed a National Letter of Intent ("NLI"). (*Id.*, Ex. E.) The NLI includes the following language above the Eppleys' signatures, "[m]y signature on this NLI nullifies any agreements, oral or otherwise, which would release me from the conditions stated within this NLI." (*Id.*)

---

[3] In addition to the specific date range listed on the GIA Contract, the following line instructs that "[a]ll grants, by N.C.A.A. regulations are awarded for a period of one year only." (D.I. 22 at Ex. B.)

3

During Ms. Eppley's first semester, Coach Miller announced her retirement and left the UD field hockey program. (D.I. 1 at ¶ 36.) Rolf van de Kerkhof ("Coach Rolf") was hired as the new head field hockey coach shortly thereafter. (*Id.* ¶ 37.) The Eppleys assert that the number, length and intensity of practices were increased dramatically under Coach Rolf. (*Id.* ¶ 40.)

On March 21, 2011, Coach Rolf informed Ms. Eppley that based on her performance, her scholarship was going to be reduced to 20% during her second year on the team.[4] (*Id.* ¶ 47.) Ms. Eppley subsequently received a letter from Student Financial Services formally notifying her that her athletically related financial aid was being reduced for the 2011-2012 years to 20%. (*Id.* ¶ 49.) Ms. Eppley filed an appeal and attended an administrative hearing in an attempt to have her scholarship amount increased. (*Id.* ¶¶ 54-60.) Ms. Eppley contacted Coach Miller by email prior to her appeal hearing. (D.I. 22, Ex. H.) Ms. Eppley explained Coach Rolf's decision to cut her scholarship and stated that Coach Miller could help her in the appeal process "by letting the committee know that my financial aid this year is to be 75% of a full scholarship." (*Id.*) Notably, Coach Miller informed Ms. Eppley that "[a]n email from me stating that I would have renewed your scholarship will not have any validity in your hearing." (*Id.*) In a written decision the hearing Board stated that it "finds that the reduction of Ms. Eppley's grant-in-aid for the 2011-2012 academic year was justified and appropriate, and on that basis denies Ms. Eppley's appeal." (D.I. 1 ¶ 60.) Ms. Eppley resigned from the field hockey team prior to receiving the hearing Board's written decision. *See* J. Eppley Tr. at 86:1-14.

---

[4] Coach Rolf advised Ms. Eppley that her base scholarship for the following academic year would be reduced from 35% to 20%, but Coach Rolf provided Ms. Eppley an opportunity to increase her scholarship to 40% if she met certain performance goals. (*See* D.I. 21 at 11; D.I. 22, Ex. G at P0035-36.)

4

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). A fact is material if it "could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). There is a genuine issue "if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* When determining whether a genuine issue of material fact exists, the district court must view the evidence in a light most favorable to the nonmoving party and draw inferences in that party's favor. *See Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citing FED. R. CIV. P. 56(e)).

Importantly, the mere existence of some evidence in support of the nonmoving party will not prove sufficient for denial of a summary judgment motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* Specifically, the party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Thus, a nonmoving party asserting that a material

5

fact is in dispute must support this assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." See FED. R. CIV. P. 56(c)(1). If the nonmoving party fails to make a sufficient showing on an essential element of its case for which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See *Celotex Corp.*, 477 U.S. at 322.

## IV. DISCUSSION

UD claims that the Eppleys cannot establish their Title IX claims because there is no evidence of the University-wide, gender-based disparate treatment required to prove a Title IX violation. (D.I. 21 at 6.) UD further contends that the Eppleys have not made the required showings for either negligent misrepresentation or fraudulent inducement. (*Id.* at 7.) Conversely, the Eppleys assert that Summary Judgment must be denied because there is a dispute as to a material fact regarding promises made by UD to the Eppleys relating to Ms. Eppley's athletic scholarship. (*See* D.I. 25 at 4.) The court examines the parties' arguments below.

### A. There is no Evidence in the Record to Support the Eppleys' Title IX Claim.

UD asserts that the Eppleys' Title IX claim is premised largely on the allegations that Ms. Eppley's scholarship was reduced while some male students' scholarships allegedly were not. (D.I. 21 at 15.) Ms. Eppley relies on statements from four male football players who apparently told her that they too were promised scholarships beyond one year. (*Id.* at 16.) She testified at her deposition that she was unaware of whether the male athletes in fact received what they told her they were promised or whether the scholarships were adjusted on an annual basis. (*See* J. Eppley Tr. 67:13-70:14.) UD asserts that Ms. Eppley's claim, even if true, hardly reflects the type of

University-wide, gender-based disparate treatment required to prove a Title IX violation. (D.I. 21 at 6.) In addition, UD provided evidence showing that male students were, in fact, also provided lesser scholarships. (*See* D.I. 22, Ex. M.)

The court concludes that summary judgment is appropriate as to the Eppleys' Title IX claim because there is no evidence in the record beyond Ms. Eppley's bare assertions and conclusory allegations to support their assertions of disproportional treatment. No evidence in the record supports the Eppleys' contentions, therefore, their Title IX claim fails as a matter of law.

### B. The Eppleys have not made the Required Showing for Negligent Misrepresentation.

In Delaware, negligent misrepresentation requires (1) a pecuniary duty to provide accurate information, (2) the supplying of false information, (3) failure to exercise reasonable care in obtaining or communicating information; and (4) a pecuniary loss caused by justifiable reliance upon the false information.[5] *See Atwell v. RHIS Inc.*, 2006 WL 2686532 (Del. Super. Aug. 18, 2006); *see also, e.g., H-M Wexford LLC v. Encorp. Inc.*, 832 A.2d 129, 147 n.44 (Del. Ch. May 27, 2003). In addition, negligent misrepresentation is a viable claim in Delaware only when there is a fiduciary relationship between the parties. *See Airborne Health, Inc. v. Squid Soap*, 984 A.2d 126, 144 (Del. Ch. 2009); *see also, e.g., Krahmer v. Christie's Inc.*, 903 A.2d 773, 784 (Del. Ch. 2006) ("A plaintiff may only recover for negligent misrepresentation where there is a fiduciary or special relationship between the parties.").

The Eppleys made no attempt to satisfy the elements of this claim. Instead, they rely entirely on allegations that Coach Miller promised Ms. Eppley a multi-year scholarship, that Ms.

---

[5] Counsel for the Eppleys cite no legal authority and propose a list of elements for negligent misrepresentation that has no support in Delaware. (*See* D.I. 25 at 7.)

7

Eppley ignored other opportunities, and that Coach Miller made the promise to induce Ms. Eppley to attend the University of Delaware. (D.I. 25 at 7.)

At the time Coach Miller was recruiting Ms. Eppley, there was no fiduciary relationship between the Eppleys and Coach Miller. While she had obligations to abide by NCAA and University rules, neither established a duty to act as a fiduciary on behalf of Ms. Eppley or her parents. Without an underlying fiduciary relationship, the Eppleys cannot succeed on Count III. Even if Coach Miller had promised Ms. Eppley that she would receive a 75% scholarship her second year, any reliance on Coach Miller's alleged statements was not justifiable in the face of the GIA Contract and the NLI. Ms. Eppley testified that she was aware of the prohibition against multi-year promises of financial aid. J. Eppley Tr. at 20:22-21:9 ("Q. Do you recall the portion of the [NCAA] manual that says that the university may not promise financial aid to a student athlete for a duration of more than one year? A. Yes. Q. Were you aware of that at the time that you signed your letter of intent [on February 3, 2010]? A. Yes."). The Eppleys signing of the NLI "nullifie[d] any agreements, oral or otherwise." Thus, any other agreements which may have been made between Coach Miller and the Eppleys were null and void as of the signing of the NLI. The documents that the Eppleys signed directly contradict their reliance on Coach Miller's alleged representations. In light of these documents any reliance on the promise was unreasonable.

The court finds that the Eppleys have not presented enough evidence to enable a jury to reasonably find for them on this claim.[6] UD has demonstrated an absence of disputed material facts and the Eppleys have failed to come forward with specific facts showing that there is a

---

[6] UD also asserts that the Eppleys' claim is barred under theories of acquiescence, waiver and estoppels. (*See* D.I. 21 at 20.) Because the court determines that the Eppleys have not made the necessary showing a discussion of these additional grounds for judgment in favor of the defendants is unnecessary.

genuine issue for trial. As such, the court is persuaded that UD has met its burden and summary judgment is appropriate.

### C. The Eppleys have not made the Required Showing for Fraudulent Inducement.

To prevail on a fraudulent inducement claim, the Eppleys must satisfy the elements of common law fraud. *See Haase v.* Grant, 2008 WL 372471 (Del. Ch. Feb. 7, 2008). The elements include: (1) a false representation of material fact; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) the defendant's intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance. *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 958 (Del. 2005).

As was previously discussed with regard to the Eppleys' negligent misrepresentation claim, no evidence was submitted to establish each of the elements of fraudulent inducement. While the Eppleys argue that acceptance of the UD scholarship was the result of Miller's statement, the Eppleys subsequently disclaimed all previous agreements and any reliance on Miller's statement was, therefore, unreasonable. In consideration of the relevant standard the court concludes that the Eppleys have not made the required showing for fraudulent inducement.

## V. CONCLUSION

For the aforementioned reasons, the court will grant UD's Motion for Summary Judgment (D.I. 20.)

Dated: January 12, 2015

UNITED STATES DISTRICT JUDGE

9